IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIO MAZARIEGOS HERNANDEZ,<br><br>              Plaintiff,<br><br>    vs.<br><br>JANET NAPOLITANO, Secretary of the Department of Homeland Security, in her official capacity as head of the Department of Homeland Security; ALEJANDRO MAYORKAS, Director, United States Citizenship and Immigration Services; KENNETH MADSEN, Director of Chicago Asylum Office; ERIC H. HOLDER, JR., Attorney General, in his official capacity as head of the Department of Justice; JOHN F. KERRY, Secretary of State, in his official capacity as head of the Department of State; and DEPARTMENT OF HOMELAND SECURITY,<br><br>              Defendants. | 8:13CV113<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendants' (hereinafter, "the Government's") motion to dismiss for lack of subject matter jurisdiction and for failure to state claim on which relief can be granted. Filing No. 21. This action involves an alleged breach of the stipulated Class Action Settlement Agreement approved in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) (the "ABC Agreement") by the defendants (hereinafter, collectively, "DHS" or "immigration authorities"). The plaintiff contends that the defendants[1] erroneously concluded that he

---

[1]Defendant Janet Napolitano is the Secretary of the Department of Homeland Security, the successor agency to the former Immigration and Naturalization Service ("INS"). Defendant Alejandro Mayorkas is the Director of United States Citizenship and Immigration Services ("USCIS"), a successor agency that was part of the former INS. Defendant Kenneth Madsen is the Director of the Chicago Asylum Office, also part of the former INS. Defendant Eric H. Holder, Jr., is the Attorney General of the United States. Defendant John F. Kerry is the Secretary of State and is alleged to be responsible for the administration and enforcement of immigration law. 8 U.S.C. § 1104. Under the Homeland Security Act of 2002, 116 Stat. 2135 (Nov. 25, 2002), the functions and responsibilities and obligations of the former INS were transferred to DHS. *See* 6 U.S.C. §§ 251, 552, 557; *Molina Jerez v. Holder*, 2012 WL 1072581,

did not timely invoke the benefits of the ABC Agreement and was not entitled to relief thereunder. He seeks declaratory and injunctive relief, including, but not limited to, the right to apply for special cancellation of removal. Jurisdiction is premised on 28 U.S.C. § 1346 (United States as defendant in contract disputes of less than $10,000), 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §§ 2201-2202 (actions for declaratory relief).

I.  FACTS

   A.  Historical Background

In 1985, "'thousands of Salvadorian and Guatemalan asylum seekers . . . filed a lawsuit against [immigration authorities] claiming their asylum applications had not been fairly adjudicated.'" *Molina Jerez v. Holder*, 625 F.3d 1058, 1062 (8th Cir. 2010) (quoting *Cuadra v. Gonzales*, 417 F.3d 947, 948 (8th Cir. 2005)); *Jacobo v. Attorney General of the United States*, 459 Fed. App'x 112, 114-15 (3d Cir. 2012) (quoting *In re Morales*, 21 I. & N. Dec. 130, 132 (BIA 1996)) (noting that the litigation "'arose out of systemic challenges by certain Salvadorans and Guatemalans in the United States to the processing of asylum claims.'"). The United States had denied many applicants asylum because it had favorable relations with El Salvador and Guatemala and therefore concluded that many applicants could not have a "well-founded fear of persecution" in those countries. *See American Baptist Churches v. Thornburgh,* 760 F. Supp. 796, 799 (N.D. Cal. 1991) ("ABC"). In 1991, a district court approved a class action settlement agreement in that case. *Id.* at 799, 804-05. The ABC Settlement

---

*1 n.2 (D. Minn. March 30, 2012) ("Molina Jerez II") (noting "[t]he INS ceased to exist in 2003 and its functions were transferred to the Department of Homeland Security. USCIS and Immigration and Customs Enforcement ("ICE") are divisions within the Department of Homeland Security.)." For ease of reference, the defendants will be referred to, collectively, as DHS or "immigration authorities."

offered asylees of those countries another chance to seek asylum and relief from the consequences of prior asylum denials.  *Id.*  The United States "'agreed not to deport class members (commonly referred to as the ABC class), to give each class member a proper *de novo* asylum interview, and to give class members work authorization while they awaited these interviews.'"  *Molina-Jerez,* 625 F.3d at 1061 (quoting *Cuadra*, 417 F.3d at 948).  "The settlement was intended to provide 'additional review procedures' to asylees."  *ABC,* 760 F. Supp. at 804.  Also, "the ABC settlement provided that '[e]ligible class members . . . [would] not be placed in [deportation] proceedings nor will proceedings be resumed before the[ir] adjudication is completed."  *Jacobo v. Attorney General of United States*, 459 Fed. App'x 112, *115 (3d Cir. 2012) (quoting *ABC,* 760 F. Supp. at 803).

The de novo adjudications provided to ABC class members were designed to be procedurally robust.  *Jacobo*, 459 Fed. App'x at 115.  For instance, every adjudication was to include a new interview.  *Id.*  Every application was guaranteed a "preliminary assessment" by an asylum officer, and a second read by a supervisor.  *Id.*

The ABC settlement class was broadly defined as "Guatemalans in the United States as of October 1, 1990" and "Salvadorans in the United States as of September 19, 1990."  *Id.* at 114.  The benefits of the agreement were available to "Guatemalans who indicate to the INS in writing their intent to apply for a de novo asylum adjudication before an Asylum Officer, or otherwise to receive the benefits of this agreement, within the period of time commencing July 1, 1991 and ending on December 31, 1991."  *Id.* at 800; see *Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007).  Also, the ABC Agreement explicitly grants jurisdiction to federal district courts if an ABC class

3

member is determined ineligible for benefits. *Id.* at 809–810; *see Molina-Jerez*, 625 F.3d 1058, 1069 (8th Cir. 2010) (holding that courts of appeals lack jurisdiction to review the Department of Homeland Security/USCIS's factual determination that a purported asylee failed to timely register for ABC Agreement benefits); *Molina Jerez II*, 2012 WL 1072581 at *3.[2]

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009-546. The legislation made a number of changes to immigration law including replacing suspension of deportation with cancellation of removal and strengthening the reinstatement of removal provisions. *Molina Jerez*, 625 F.3d at 1062. "Before IIRIRA, 'aliens with pending asylum claims were able to apply for suspension of deportation' which granted the Government more discretion to grant permanent resident status to aliens." *Id.* (quoting *Cuadra*, 417 F.3d at 948-49). IIRIRA replaced the suspension of deportation with the "much more restrictive form of immigration relief" called cancellation of removal. *Cuadra*, 417 F.3d at 949. However, in 1997, Congress passed the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), 111 Stat. 2160, which "'allows ABC class members to seek relief under conditions approximating pre-IIRIRA suspension of deportation.'" *Molina Jerez*, 625 F.3d at 1063 (quoting *Cuadra*, 417 F.3d at 949). Such

---

[2] Numerous district courts have concluded that they have jurisdiction to hear breach of contract claims relating to ABC eligibility. *See e.g., Tobar-Barrera v. Napolitano,* 2010 WL 972557, *2-*3 (D. Md. March 12, 2010) (finding that the ABC Agreement granted subject matter jurisdiction to the district court over a claim brought by a class member who was declared ineligible for ABC Agreement benefits); *Chaly-Garcia v. United States,* 2005 WL 1459330 (D. Or. June 17, 2005) (exercising jurisdiction over plaintiff's challenge to USCIS's determination regarding ABC eligibility, but finding plaintiff ineligible), *rev'd on the merits*, *Chaly-Garcia*, 508 F.3d. at 1204 (holding that plaintiff established registration for ABC benefits); *Escobar v. Mukasey*, 2008 WL 3843829, *4 (D. Cal. Aug. 15, 2008) (assuming jurisdiction to consider plaintiff's eligibility for ABC benefits); *Villalta v. Holder*, 2012 WL 2280099, *4-*5 (D. Cal. June 18, 2012) (same).

relief is called "special rule cancellation of removal."[3] *Id.* (noting that legislation was enacted to ameliorate some of IIRIRA's adverse effects upon ABC class members). Also, in 2000, Congress passed the LIFE Act Amendments of 2000, 114 Stat. 2763A-324 through 2763A-327, which exempt "ABC class members from IIRIRA's strengthened reinstatement-of-removal provision and thereby 'extend[s] NACARA's benefits to a category of aliens previously ineligible for NACARA relief.'" *Id.* (quoting *Aguilar de Polanco v. United States Dep't of Justice*, 398 F.3d 199, 202 (2d Cir. 2005)).

The INS "delayed implementation of the [ABC] settlement for years, and what were once strong asylum claims became stale as conditions improved in El Salvador and Guatemala." *See Cuadra* 417 F.3d at 948; *Molina Jerez*, 625 F.3d at 1061. In the intervening years, Congress amended immigration laws several times. The Eighth Circuit Court of Appeals explains:

> By the mid-1990s, many ABC class members accrued the requirements for suspension of deportation under 8 U.S.C. § 1254 (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) on September 30, 1996), which gave the Attorney General discretion to grant permanent resident status to an alien who had been in the United States for seven years, was of good moral character, and whose deportation would cause extreme hardship for the alien or certain lawfully present relatives. For many ABC class members, relief through suspension of deportation was a better alternative than their now-stale asylum claims.

---

[3] NACARA grants the Attorney General discretion to cancel removal of certain aliens who, among other things:

(ii) [have] been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application; and

(iii) [have] been person[s] of good moral character during such period.

NACARA § 203 (emphasis added). NACARA § 203 is an amendment to IIRIRA, and is now part of the "transitional rules" found at IIRIRA § 309(f)(1)(A). *See* 8 U.S.C. § 1101 note; *Cuadra*, 417 F.3d at 948 n.1.

> As ABC class members began to apply for suspension of deportation, however, Congress passed IIRIRA, which replaced suspension of deportation with a much more restrictive form of immigration relief—cancellation of removal. *See* 8 U.S.C. § 1229b. To make relief easier for ABC class members, Congress passed NACARA, which allows ABC class members to seek relief under conditions approximating pre-IIRIRA suspension of deportation.
>
> ABC class members who were placed in removal proceedings prior to IIRIRA's effective date are eligible for NACARA suspension of deportation; ABC class members who were not placed in deportation proceedings prior to IIRIRA's effective date (like Cuadra) are eligible for special rule cancellation of removal.

*Cuadra*, 417 F.3d at 948-49.

The United States Citizenship and Immigrations Services ("USCIS") later issued guidance on the proper application of the terms of the ABC Agreement. *See* Filing No. 26, Index of Evid., Ex. 4, USCIS Director Joseph Langlois Memorandum dated August 5, 2008, "Making ABC Determinations, *Chaly-Garcia v. U.S.*, 508 F.3d 1201 (9th Cir. 2007)" ("Langlois Memo II"); Ex. 3, USCIS Director Joseph Langlois Memorandum dated June 8, 2006, "Making ABC Registration Determinations" ("Langlois Memo I"). Its policies evolved in response to caselaw as follows:

> Previously, in determining whether Guatemalan and Salvadoran nationals satisfied the registration requirement to receive ABC benefits under the Settlement Agreement, USCIS required evidence of registration, which could be established through credible testimony. Prior to the *Chaly-Garcia* decision, the filing of an affirmative asylum application alone was not viewed as evidence for satisfying the registration requirement. Pursuant to the Ninth Circuit's findings, however, a Guatemalan or Salvadoran national, who affirmatively filed an I-589 application on or after the date the court provisionally approved the Settlement Agreement and prior to the conclusion of the designated registration period, has indicated the intent to receive ABC benefits under the Settlement Agreement and therefore should be considered "registered."

6

*Id.,* Langlois Memo II at 2.  Furthermore, USCIS guidance provided that "asylum officers should avoid relying extensively on technical questions such as whether the applicant has 'registered' or if the applicant can provide detailed descriptions of the ABC registration form or process."  See *Jerez v. Holder,* 2011 WL 7637808, *11 (D. Minn. Sept. 1, 2011) (noting that official INS policy provided that the receipt for Guatemalans should be dated no later than January 31, 1992, indicating that one month was added to the filing deadline to account for delays in retrieving mail for the post office box.") (Report and Recommendation of Magistrate Judge), *aff'd in part*, *Molina Jerez II*, 2012 WL 1072581 at *7 (acknowledging that USCIS memoranda establish that immigration authorities recognized and allowed for delays in postal processing).

Under the REAL ID Act, 8 U.S.C. § 1252(a)(5) & (b)(9), review of removal orders is channeled to the courts of appeal.  *Skurtu v. Mukasey*, 552 F.3d 651, 655 (8th Cir. 2008).

### B. The Plaintiff's Allegations

In his complaint, the plaintiff, a Guatemalan national who was in the United States as of October 1, 1990, asserts he is a member of the ABC class and alleges that on March 29, 2007, immigration authorities breached the ABC settlement.  He alleges that the only issue is whether the plaintiff timely expressed his intention to invoke the benefits of the ABC Agreement in accordance with the agreement.

He alleges that he completed an I-589, Application for Asylum, an ABC registration card, an I-765 Application for Employment Authorization, INS Form WR-636, Biographic Information Form G-325, and Personal Identification Form (E-24) in December 1991.  In preparation for this filing, the plaintiff produced his Guatemalan

birth certificate in October of 1991, obtained his California driver's license on November 12, 1991, and had his fingerprints taken for the purpose of filing his asylum application on December 5, 1991.

He further alleges that his I-765 Application for Employment Authorization, which indicates he is applying for asylum as an ABC class member, and his INS Form WR-636, are both dated December 9, 1991. He alleges he paid his notary, Mauricio Castellon, $100 to file his asylum application and ABC registration form in December of 1991. He further alleges that Mauricio Castellon told him that he was registered for ABC benefits on December 9, 1991. Castellon also indicated to the plaintiff the applications would be mailed the same day from his office in San Francisco, California.

The plaintiff alleges his asylum application and ABC registration were received by the local INS Office in San Francisco, California, within 22 days of their mailing, no later than December 31, 1991. The asylum application is date-stamped January 13, 1992. The plaintiff alleges that the INS Office in San Francisco failed to timely date-stamp the application and misplaced the ABC registration due to its poor record-keeping at the time, as the agency has subsequently acknowledged.

He also alleges that after he completed his ABC registration and Asylum Application, he lived and worked lawfully in the United States from 1992 to the present. He resides with his wife, Dominga Mazariegos, who is also an applicant for asylum.

Further, the plaintiff alleges that his Immigration file, in the possession of defendants, contains plaintiff's INS Form WR-636, submitted along with his Asylum Application, bearing the date December 9, 1991. He additionally alleges that his immigration file contains a fingerprint card supplied by the INS office in San Francisco

that was signed, dated and verified by the agent who took plaintiff's fingerprints on December 5, 1991. Moreover, the card states that he was fingerprinted on that date for the purposes of filing an 1-589. Also, his administrative immigration file lists him as "Special Group: ABC" on a printout dated March 24, 1995.

On March 29, 2007, plaintiff appeared for his asylum interview in Omaha, Nebraska, without legal representation. The interview was conducted by an Asylum Officer from the Chicago Asylum Office before the issuance of the *Chaly-Garcia* memo and without the benefit of its procedures. Following that interview, USCIS issued a "Notice of Ineligibility for ABC Benefits" based on its conclusion that "[t]here is no credible evidence that you registered for ABC benefits; either by filing directly or, if Salvadoran, by applying for TPS." Filing No. 1, Complaint at 14. On July 5, 2007, USCIS likewise issued a "Referral Notice," finding plaintiff ineligible for asylum. USCIS issued a Notice to Appear ("NTA") on the same day, ordering Mr. Mazariegos Hernandez to appear before the Omaha Immigration Court on September 11, 2007. The Notice to Appear was filed with the Immigration Court on April 16, 2008.

The plaintiff alleges he continued to assert that he was a registered ABC class member and that he was eligible for asylum during removal proceedings and filed form 1-881, Application for Suspension of Deportation or Special Rule Cancellation of Removal, under NACARA § 203 with the Immigration Court on February 4, 2009. The immigration judge denied his applications for relief and granted voluntary departure in a decision and order dated July 27, 2011, finding that he had not met his burden of showing that he timely registered for ABC benefits, and refusing to adjudicate his claim for relief under NACARA.

The immigration judge also denied Mr. Mazariegos Hernandez's application for asylum and withholding of removal, finding, over the government's objection, that he had jurisdiction to consider whether the plaintiff had timely registered for ABC benefits. The plaintiff timely filed an appeal of the immigration judge's decision regarding eligibility for asylum and whether he had timely registered for ABC benefits to the Board of Immigration Appeals on August 18, 2011. On March 7, 2013, the Board dismissed his appeal. He filed this action for breach of the ABC Settlement Agreement within 30 days of the date of the Board's decision dismissing his appeal.

In support of their motion to dismiss, the defendants submit the immigration judge's July 27, 2011 decision and the Board of Immigration Appeals March 7, 2013 decision. Filing No. 23, Index of Evid., Exs. A & B. The immigration judge considering plaintiff's testimony at the hearing on his petition for cancellation of removal found the plaintiff's testimony credible. *Id.*, Ex. A at 8. The court denied the plaintiff the benefit of NACARA finding that he did not prove by a preponderance of evidence that he had timely registered for ABC benefits. *Id.* at 9. On appeal of the order, the Board similarly credited the plaintiff's testimony, but found that he had not established that the ABC application was timely. *Id.*, Ex. B at 6. The Board noted that the Government "[does] not actually claim to know when the notary filed the documents." *Id.* Given that disposition, the Board did not address the plaintiff's alleged involvement in persecution. *Id.* at 4.

In response to the defendants' motion, the plaintiff submits the Langlois memoranda and briefs submitted by the government in the *Molina Jerez* case. Filing No. 26, Exs. 1-4. The plaintiff argues that he is not challenging the Board of

10

Immigration Appeals' March 2013 decision, but rather he challenges the initial March 29, 2007, U.S. Citizenship and Immigration Services ("USCIS") Notice of Ineligibility for benefits under the settlement reached in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) (the "ABC Agreement"). He characterizes the complaint as an action for breach of the settlement agreement and assert this court has jurisdiction under the ABC Agreement and 28 U.S.C. § 1346. Further, he contends that this court has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* ("APA"), over a claim from an individual who has suffered a "legal wrong" or has been "adversely affected or aggrieved" by agency actions.

II. LAW

A district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1). *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637, n. 4 (8th Cir. 2003) (quoting *Osborn v. United States,* 918 F.2d 724, 728 n. 4 (8th Cir. 1990). For the court to dismiss for lack of subject matter jurisdiction under rule 12(b)(1), "the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction." *Id.* In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.* In such a challenge, this court is "free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case." *Osborn*, 918 F.2d at 730. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff has the burden of proving that jurisdiction does in fact exist. *Id.*

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court conducts a two-part analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). First, the court must accept all the complaint's factual allegations as true. *Id.* at 678. Second, the court must then "determine whether the . . . [factual allegations] plausibly give rise to an entitlement to relief." *Id.* at 679. This "plausibility" analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Properly pled factual allegations are taken as true, without regard to the likelihood of actual proof of those facts, even if the ultimate chances of recovery seem "remote." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

III. Discussion

The court first finds it has jurisdiction to consider the plaintiff's breach of the ABC Agreement claim. The defendants' jurisdictional challenge is premised on the contention that the plaintiff's action is essentially a challenge to a final order of removal that is barred by the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(5) and (b)(9), or, alternatively, a challenge to the Board's determination that the plaintiff is not eligible for special rule cancellation of removal under NACARA, which is not reviewable.[4]

---

[4] The plaintiff acknowledges that he can only seek review of the Board's removal decision in the Court of Appeals, and has filed a petition for review with the Eighth Circuit. *See* Filing No. 25, Plaintiff's Brief at 7.

The court agrees with the plaintiff that the defendants mischaracterize his complaint. The plaintiff challenges the Board's conclusion that he is not a member of the ABC class. This court has jurisdiction over that claim under the ABC Agreement. *See Molina Jerez*, 625 F.3d at 1068 (rejecting the government's claim that the Eighth Circuit Court of Appeals had jurisdiction under 8 U.S.C. § 1252(a)). The ABC Agreement provides that district courts are the proper forum in which to raise a breach of ABC Agreement claim. Like the plaintiff in *Molina Jerez*, resolution of the case hinges on a critical factual determination: Whether the plaintiff registered for ABC benefits on or before December 31, 1991. A favorable finding by this court on that issue would open up availability to apply for other forms of relief, i.e., NACARA. That an action may tangentially affect an order of removal does not mean it is a challenge to an order of removal so as to come within the purview of the REAL ID Act. Similarly, the jurisdiction-stripping provision contained in NACARA § 203(a) does not apply to ABC class members seeking special cancellation of removal. NACARA § 203(a)(5)(C); *Cuadra*, 417 F.3d at 948 (ABC class members placed in removal proceedings after IIRIRA's effective date are eligible for Special Rule Cancellation of Removal). Accordingly, the court finds the defendants' motion to dismiss for lack of jurisdiction should be denied.

The court similarly rejects the defendants' argument that the allegations of the plaintiff's complaint fail to state a claim for relief. The government's argument in this respect is that the allegations of the complaint show that plaintiff failed to timely apply

for ABC benefits and is accordingly not entitled to the benefit of the ABC Settlement.[5] In his complaint, the plaintiff alleges that the defendants breached the ABC settlement, and continue to do so, by not affording him the benefits of the agreement. He states in his complaint that he filed his asylum application during the registration period, which must be assumed true in the context of a motion to dismiss. Additionally, the plaintiff's "immigration file contains a fingerprint card supplied by the INS office in San Francisco that was . . . required for the asylum application . . . , signed not only by the plaintiff, but . . . also signed, dated and verified by the agent who took Plaintiff's fingerprints on December 5, 1991." Filing No. 1, Complaint at 17. The card "states that Plaintiff was fingerprinted on that date for the purposes of filing an 1-589." *Id.* The plaintiff also produced multiple additional written indications of his intent to receive the benefits of the agreement. *Id.* at 20. There is apparently no dispute that the application was file-stamped on January 13, 1992. There is caselaw to the effect that "[t]he plain meaning of the ABC Agreement, relevant policy memoranda, and regulations all favor an interpretation that the ABC registration form had to be mailed—but not received—by December 31, 1991." *Molina Jerez II*, 2012 WL 1072581 at *8. The facts outlined in the complaint—including the allegations of contacting a notary, presenting the fingerprint card, and the INS's ultimate receipt of the application—nudge the plaintiff's allegations that his ABC registration form was timely "across the line from conceivable to plausible."

---

[5] In their reply brief, the defendants assert for the first time that the plaintiff's action is barred by the statute of limitations found in 28 U.S.C. § 2401. *See* Filing No. 30, Reply Brief at 2. They argue that a suit challenging final agency action pursuant to 5 U.S.C. § 704 (the APA) must be commenced within six years after the right of action first accrues. Because this court does not base jurisdiction on the APA, the argument lacks merit. Further, the defendants allegedly continued to breach the agreement by failing to recognize him as an ABC class member and failing to give him the benefit of a *Chaly-Garcia* hearing throughout the course of his immigration proceedings.

*Iqbal*, 556 U.S. at 680. The plaintiff's plausible allegation that the form was timely states a claim for relief for breach of the ABC Agreement.

IT IS ORDERED that the defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state claim on which relief can be granted (Filing No. 21) is denied.

Dated this 17th day of December, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

15